# EXHIBIT A

**ARTIST PERFORMANCE AGREEMENT**

This Agreement made effective as of this 5th day of September 2022 by and between MJB Touring, Inc. ("**FURNISHER**") f/s/o MARY J BLIGE (the "**ARTIST,**") having an address c/o Tri-Star, 11 Music Circle South, Nashville, TN 37203 and RM Talent Agency, LLC ("**PURCHASER**"), c/o Dwight Priest, having an address located a 1255 Liberty Bell Ct Rock Hill, SC 29732. **FURNISHER** and **PURCHASER** are sometimes referred to collectively referred to herein as the "Parties" and each individually, a "Party".

**W I T N E S S E T H :**

**WHEREAS, PURCHASER** wishes to engage Furnisher to cause **ARTIST** to provide live musical entertainment as set forth herein (hereinafter, **Performance**") at the Funk Fest 2022 (the "**Event**"), to be held outside at the Miami Fairgrounds, 10901 SE 24th Street, Miami, FL  33165 ("**Performance Site**"), and

**WHEREAS**, the **PURCHASER** and **FURNISHER** desire to enter into an agreement setting forth the terms and conditions of such engagement.

**NOW, THEREFORE, IN CONSIDERATION OF THE COVENANTS AND CONDITIONS CONTAINED HEREIN, THE PURCHASER AND FURNISHER AGREE AS FOLLOWS:**

1. **RECITATIONS.** The above recitations are true and correct.

2. **PERFORMANCE DATE**. **PURCHASER** hereby engages **FURNISHER** to cause **ARTIST** to perform live at the Event on Friday, December 30, 2022 ("Performance Date").  **FURNISHER** shall determine all creative elements of the Performance, including, without limitation, selection of music to perform. Performance capacity is 10000.

3. **CONSIDERATION**. **PURCHASER** shall pay **FURNISHER** the sum of Nine-Hundred and Fifty-Thousand dollars ($1,100,000) ("Performance Fee") as directed by **FURNISHER** as follows:

    (a)     (i) **PURCHASER** shall pay to **FURNISHER** Two Hundred and Fifty Thousand ($250,000) of the Performance Fee on Sept. 8th 2022 and Three Hundred Thousand Dollars ($300,000) of the Performance Fee on Oct. 19th 2022 ("collectively, the **Deposit**") via wire transfer (wire information to be furnished by **FURNISHER**); and upon the day of the Performance prior to the Performance**(i) PURCHASER** shall pay **FURNISHER** the balance of the Performance Fee of Five Hundred Thousand Dollars ($550,000.00) via wire transfer or certified funds, as directed by FURNISHER.

    (b)     **FURNISHER** is responsible for payment of all applicable taxes solely in connection with the Performance Fee.

    (c)     **PURCHASER** shall provide at **PURCHASER'S** sole cost, first class round trip ground transportation for **ARTIST** and **ARTIST'S** entourage to and from hotel to Performance Site on Performance Date.

4. **DRESSING ROOM/CATERING.** First class dressing rooms will be provided and **PURCHASER** will comply with Artist's catering rider to be provided.

5. **EQUIPMENT AND TECHNICAL REQUIREMENTS**. **FURNISHER** will provide **ARTIST'**s

DP

backline equipment at **FURNISHER'**s cost. Subject to **ARTIST'**s tech requirements in **ARTIST's** rider which are to be coordinated with **ARTIST**'s tour management team, **PURCHASER** shall provide adequate staging, lighting, sound, engineering and other production elements. **PURCHASER** is responsible for all production costs in connection with the Event and is solely responsible for securing all permits, licenses, clearances and insurance, including without limitation all music clearances. **ARTIST** shall have the right to rehearse prior at the Performance Site prior to the Performance at a mutually agreed to time.

6. **PERFORMANCE TIME, LOCATION**: **ARTIST** shall render the Performance at the Performance Site on the Performance Date at a mutually determined time, which Performance shall be between 60-75 minutes in length. In the event of inclement weather or **PURCHASER**'s scheduling or logistic difficulties, **PURCHASER** shall have the right to delay **ARTIST**'s Performance for up to ninety (90) minutes from the scheduled performance time set forth in this Agreement. If any such delay exceeds ninety (90) minutes, **FURNISHER** has the right to cancel the Performance without liability and **FURNISHER** shall retain the Deposit and **PURCHASER** shall be obligated to pay the balance of the Performance Fee if not already paid(or if already paid, **FURNISHER** to retain such balance).

7. **TICKETS/BILLING:**

(a) Ticket Price: Exact ticket prices [TBD]; **ARTIST** to receive 50 complimentary tickets, all of which to be in the first 3 rows of the Performance Site.

(b) Festival Billing. **ARTIST** to be billed as headliner (subject to her approval of wording). **PURCHASER** acknowledges that no special guests or other performers are to be on stage with ARTIST unless specifically agreed to in writing by **FURNISHER**.

8. **CANCELLATION/DEFAULT/TERMINATION**.

(a) If the Event is canceled for any reason, **PURCHASER** shall pay **FURNISHER** the full Performance Fee for such cancellation and **PURCHASER** will reimburse **FURNISHER** all expenses paid. In the event of such cancellation, the Parties agree to use reasonable efforts to reschedule **ARTIST** for appearance at a **PURCHASER** event subject to Artist's availability and provided any failure to do so will not affect **FURNISHER's** right to receive full compensation, including without limitation the full Performance Fee as set forth herein or constitute a breach hereunder.

(b) If **PURCHASER** breaches any of its obligations hereunder, which include, without limitation, **PURCHASER**'s refusal or neglect to: provide any of the items required of **PURCHASER** hereunder; timely make any of the payments referred herein; furnish the type, size and quality of public address system be otherwise than in perfect working condition; and/or perform any obligations of **PURCHASER** in connection with the engagement, then in any of such event and in addition to any and all of **FURNISHER'S** other rights or remedies, **FURNISHER** may elect to terminate this Agreement and **PURCHASER** shall remain liable to **FURNISHER** for and shall pay **FURNISHER** the full Performance Fee herein provided and **ARTIST'S** expenses and any amount otherwise payable as a matter of law.

(c) **FURNISHER** may terminate this Agreement without liability if: in **FURNISHER'S** judgment, the Performance or Event may directly or indirectly expose **ARTIST,** or any member in **ARTIST'**s group, any employee of **ARTIST** or **FURNISHER** or any company contracted by **FURNISHER** or any portion of the audience, to danger the death or injury or civil strife of any kind;

or by reason of any threat or outbreak of violence; or breach by **PURCHASER** of any of **PURCHASER'S** obligations hereunder. If this Agreement is terminated by **FURNISHER** for any of aforesaid reasons, then **FURNISHER'S** and **ARTIST'S** obligations shall be deemed waived without liability.  **PURCHASER** shall have no claim for damages and **FURNISHER** shall retain all amounts theretofore paid to **FURNISHER** and **PURCHASER** shall not be relieved of its obligations under this Agreement, including without limitation, **PURCHASER'S** obligation to pay the total compensation (including the full Performance Fee and expenses).

9. **PROMOTIONAL USE OF ARTIST'S NAME AND LIKENESS/ARTIST ADDITIONAL SERVICES**:

(a) **PURCHASER** shall not have the right to use **ARTIST**'s name, image or likeness in any manner whatsoever without **ARTIST's** written approval in each instance. Neither **PURCHASER** nor anyone on **PURCHASER'S** behalf, shall have the right to photograph, videotape or otherwise record **ARTIST, ARTIST's** voice or music or **ARTIST's** Performance or to use any other footage, photographs or recordings of **ARTIST** or **ARTIST**'s name or likeness in any manner whatsoever, including without limitation as or to imply an endorsement or sponsorship of any kind including without limitation of any product or service. **FURNISHER** acknowledges that photography, videotaping and audio taping by the general public may not be totally controlled but **PURCHASER** will use reasonable efforts to advise attendees and general public that recording and photos are prohibited, and shall take such reasonable measures to prevent any such recording and photography. **FURNISHER** reserves the sole and exclusive right to record all or any portion of **ARTIST'S** Performance, audio and /or visual, and **PURCHASER** hereby grants Artist's Management the right (but not the obligation) to utilize the name of the **PURCHASER** and/or the Performance Site in connection therewith without compensation to **PURCHASER** or the Performance Site. **PURCHASER** represents and warrants it has obtained said rights from the Performance Site and shall supply **FURNISHER** with evidence of same upon request; however, **FURNISHER'S** failure to request review of said evidence shall not waive any **of PURCHASER'S** obligation to supply such evidence**.**  The placement of any Event sponsorships on or around the stage during **ARTIST'S Performance** shall not constitute or imply an endorsement by **ARTIST.**

(b) Subject to receipt by **FURNISHER** the Deposit and a fully executed copy of this Agreement as set forth herein:

(i) any and all proposed marketing and promotion of the Performance by **PURCHASER,** including without limitation all marketing materials and the intended uses thereof, are subject to the prior written approval of **ARTIST** in each instance; and

(ii) (A) Intentionally deleted without implication.

(B) **ARTIST** agrees to post the following social media posts in connection with the Performance at mutually agreed times: One (1) post on **ARTIST'S** Instagram account and one (1) IG story prior to Performance; and one (1) post on **ARTIST'S** Instagram account week of the Performance. All content of each social media post is subject to Artist's approval in each instance.

10. **MERCHANDISING**: **FURNISHER** may sell **ARTIST's** merchandise at the area **PURCHASER** has agreed to make available at the Performance Site and **FURNISHER** shall retain all sums generated by such sales. **ARTIST** shall provide an individual(s) to conduct any such sales. **PURCHASER** does not have the right to use ARTIST'S name or likeness in any merchandise, including without limitation festival merchandise, without the prior written consent

of **FURNISHER.**

11. **INSURANCE:** **PURCHASER** shall provide and maintain general liability insurance coverage, including what is generally known as "spectator liability", for personal injury and property damage in the minimum amount of Five Million Dollars ($5,000,000.00) combined single limit per occurrence. **PURCHASER** shall name **ARTIST** and **FURNISHER** as additional insureds.

12. **FORCE MAJEURE**:

    (a)    Neither **FURNISHER, ARTIST** nor **PURCHASER** shall be liable for failure to appear or perform their respective obligations under this Agreement in the event that such failure is caused by or due to acts of war, result of terrorism, the acts or regulations of public authorities, labor difficulties, civil tumult, strike, epidemic, pandemic (including without limitation COVID19 and variants), interruption or delay of transportation service, illness or injury of **ARTIST** or any other legitimate cause beyond the control of **FURNISHER, ARTIST** and/or **PURCHASER**. Notwithstanding the foregoing, provided **ARTIST** is ready, willing and able to perform, **FURNISHER** shall be entitled to retain the Deposit if such failure to appear or perform is due to a force majeure event prior to Artist's musicians are on stage and **FURNISHER** shall be entitled to retain the Deposit and **PURCHASER** shall pay **FURNISHER** (or FURNISHER shall retain) the balance of the Performance Fee if such failure to appear or perform is due to a force majeure event after **ARTIST's** musicians are on stage.

    (b)    Notwithstanding anything contained herein, inclement weather shall not be deemed to be a force majeure occurrence, and **PURCHASER** shall remain liable for payment of and shall pay the full Performance Fee even if the Performance is prevented by such weather conditions. **FURNISHER** shall have the sole right to determine in good faith whether any such weather conditions shall render the Performance impossible, hazardous or unsafe.

13. **INDEMNIFICATION. PURCHASER** shall defend, indemnify, save and hold harmless the **Artist, FURNISHER** and each of their officers, agents, employees, representatives and assigns from any claim, demand, suit, loss, cost or expense for any claims, damages, liabilities including reasonable outside legal fees and court courts arising out of or in connection with any breach by **PURCHASER** of any agreement, obligation, covenant, warranty and/or representation by **PURCHASER** hereunder or any wrongful act or omission of **PURCHASER,** its employees, agents, contractors or in connection with the Event (including without limitation person injury or property damage). **PURCHASER** acknowledges and agrees that neither **FURNISHER** nor **ARTIST** shall be responsible for damage or injury to any attendees or the facility, or any fixtures or personal property therein, caused by fans or any others that are not A**RTIST'S** personnel.

14. **COMPLIANCE WITH LAWS.** In the conduct of its activities under this Agreement, **FURNISHER and PURCHASER** shall comply in all material respects with all applicable federal, state, and local rules and regulations. **PURCHASER** shall obtain, at its own expense, all required licenses, consents and permits for producing the Event, including but not limited to, those required from music publishers, record labels, third parties and those required under federal copyright law.

15. **GOVERNING LAW, TAXES AND MISCELLANEOUS**: This Agreement shall be governed by laws of the State of Florida without regard to principles of conflicts of laws. Jurisdiction and venue for any suit, action, or other legal proceeding arising out of or relating to this Contract shall be Orange County, Florida. Should either Party be required to retain an attorney to enforce any terms or conditions under this Agreement, the non-prevailing Party shall be responsible for the

reasonable outside attorney's fees and costs incurred by the prevailing Party, through appeal, whether litigation is required or not.

Except with respect to the indemnification hereunder, in no event will either of the Parties or Artist be liable for any indirect, incidental, special, consequential, punitive or exemplary damages (including, without limitation, loss of profits, loss of goodwill, business interruption, loss of business opportunity or any other pecuniary loss) suffered by a Party hereto based upon contract, tort, negligence, warranty, strict liability, misappropriation and/or otherwise, and whether or not such Party has been notified of the possibility of such damages. Neither Artist nor Furnisher shall be deemed in material breach of this Agreement unless Artist or Furnisher, as applicable, has failed to remedy any such alleged breach within two (2) days following receipt by Furnisher of written notice from Purchaser detailing such alleged breach.

16.     **SEVERABILITY.** In the event that any provision of this Agreement shall be held by a court to be invalid for any reason, such invalidity shall not affect the remaining portions of this Agreement and the same shall remain in full force and effect.

17.     **WAIVERS**. Any waiver by either Party hereto of anyone or more of the covenants, conditions, or provisions of this Agreement, shall not be construed to be a waiver of any other covenant, condition or provision of this Agreement.

18.     **NOTICES.**  Any and all notices to be given to either Party under this Agreement or required by law to be served upon either Party, shall be made or served by overnight courier or certified or registered mail addressed to:

If to **FURNISHER**: c/o Sedlmayr & Associates, P.C., 489 Fifth Avenue, 30th Floor, NY, NY 10017

If to **PURCHASER**:

Notices are deemed given when received.

19.     **ASSIGNMENT.** This Agreement may not be assigned by either Party, without the express prior written consent of the other Party.

20.     **MODIFICATION.** This Agreement represents the entire understanding of the Parties as to the subject matter hereof and supersedes all previous agreements and understandings, whether written or oral, relating to the subject matter hereof. This Agreement may not be altered, amended or modified except by written instrument signed by the duly authorized representatives of both Parties.

21.     **BUSINESS RELATIONSHIP**. This Agreement does not constitute a distribution, joint venture, partnership, franchise, employee or other form of business relationship.

22.   This agreement may be signed in counterparts and by e-signature, pdf or other facsimile signature

23.    Neither **ARTIST** nor **FURNISHER** shall be bound to perform any obligations on its respective part unless and until **PURCHASER** has paid the Deposit in the form of bank wire transfer as stated above. **PURCHASER** may not announce or advertise the Performance until this

/

/

/

/

/

Agreement is fully executed and **FURNISHER** has received a fully executed copy of this Agreement and the full Deposit in **FURNISHER'S** bank account.


**RM TALENT AGENCY LLC**

By: *Dwight Priest*
Name: Dwight Priest

Date: 12/30/2022


**MJB TOURING INC.**

By: _____
Name: _____


Date: _____

6